# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER PACKER SR., LESTER PACKER II, and SHAWN DYROFF, individually and on behalf of the GLENN O. HAWBAKER, INC. BENEFIT PLAN, | **CASE NO. 4:21-cv-01747** |
| | Matthew W. Brann, C.J. |
| Plaintiffs, | CLASS ACTION |
| v. | |
| GLENN O. HAWBAKER, INC., BOARD OF DIRECTORS OF GLENN O. HAWBAKER, INC., the PLAN ADMINISTRATOR OF THE GLENN O. HAWBAKER, INC. BENEFIT PLAN; and JOHN DOES 1-20, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.      INTRODUCTION ……………………………………………………………1

II.    STATEMENT OF FACTS.................................................................................3

     A.    The Plan ..................................................................................................3

     B.    Defendants Breached Their ERISA Fiduciary Duties by Failing to Make Required Contributions to Participant Accounts ..............................................3

     C.    Background Regarding Prevailing Wage Laws................................................6

     D.    Defendant's Misrepresentations to Hourly Employees ...................................7

     E.    Defendants' Scheme to Underpay Workers ....................................................8

     F.    Plaintiffs Assert Viable Claims Under ERISA ..............................................15

III.   ARGUMENT ...................................................................................................16

     A.    Standard for Class Certification..................................................................16

     B.    The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(a) .....17

         1.   The Proposed Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1) ................................................................................................18

         2.   The Class Satisfies the "Commonality" Requirement of Rule 23(a)(2) ........18

         3.   Plaintiffs' Claims Satisfy the "Typicality" Requirement of Rule 23(a)(3)....20

         4.   Plaintiffs More Than Satisfy Rule 23(a)(4) ...................................................21

         5.   The Proposed Class is Adequately Defined and Clearly Ascertainable........25

     C.    The Class May be Properly Certified Under Fed. R. Civ. P. 23(b)(1) ..........25

         1.   Certification Under Rule 23(b)(1)(B) is Most Appropriate .........................27

i

        2.   Certification is Also Appropriate under Section 23(b)(1)(A) .......................28

    D.    Edelson and Donovan Will Adequately Represent the Class........................29

IV.   CONCLUSION .................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................ 26, 28

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*
   2019 WL 2428631 (S.D.N.Y. June 11, 2019) .......................................... 27

*Beck v. Maximus,*
   457 F.3d 291 (3d Cir. 2006) .................................................................. 26, 27

*Boley v. Universal Health Servs., Inc.,*
   337 F.R.D. 626 (E.D. Pa. 2021) ................................................................ 17

*Bordeaux v. LTD Fin. Servs., L.P.,*
   2017 WL 6619226 (D.N.J. Dec. 28, 2017) ............................................. 22

*Carrera v. Bayer Corp.,*
   727 F.3d 300 (3d Cir. 2013) ..................................................................... 25

*Cunningham v. Wawa, Inc.,*
   387 F. Supp. 3d 529 (E.D. Pa. 2019) ......................................................... 1

*Fulton-Green v. Accolade, Inc.,*
   2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) .......................................... 22

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) .................................................................................. 17

*Guidry v. Wilmington Tr.,*
   333 F.R.D. 324 (D. Del. 2019) ................................................................. 17

*In re AremisSoft Corp. Sec. Litig.,*
   210 F.R.D. 109 (D.N.J. 2002) .................................................................. 19

*In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.,*
   795 F.3d 380 (3d Cir. 2015) ..................................................................... 25

*In re Honeywell Int'l Inc. Sec. Litig.,*
   211 F.R.D. 255 (D.N.J. 2002) .................................................................. 20

*In re Ikon Off. Sols., Inc.,*
   191 F.R.D. 457 (E.D. Pa. 2000) ................................................ 23, 26, 27, 28

*In re Nat'l Football League Players Concussion Inj. Litig.,*
   821 F.3d 410 (3d Cir. 2016) ..................................................................... 22

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ........................................................................ Passim

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012) ................................................. 1, 19

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..................................................................... 19, 22

*Jones v. NovaStar Fin., Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009) ..................................................................... 24

*Karg v. Transamerica Corp.*,
  2020 WL 3400199 (N.D. Iowa Mar. 25, 2020)................................................. 19

*Koch v. Dwyer*,
  2001 WL 289972 (S.D.N.Y. Mar. 23, 2001) ................................................... 29

*Massachusetts Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ................................................................................... 17, 28

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007) ..................................................................... 28

*Moore v. Comcast Corp.*,
  268 F.R.D. 530 (E.D. Pa. 2010) ............................................. 1, 17, 21, 27

*New Directions Treatment Servs. v. City of Reading*,
  490 F.3d 293 (3d Cir. 2007) ........................................................................... 22

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ........................................................................... 20

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ......................................................................................... 4

*Pfeifer v. Wawa, Inc.*,
  2018 WL 4203880 (E.D. Pa. Aug. 31, 2018)................................................. 27

*Reinig v. RBS Citizens, N.A.*,
  912 F.3d 115 (3d Cir. 2018).......................................................................... 18

*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012) ..................................................................... 19

*Sheinberg v. Sorensen*,
  606 F.3d 130 (3d Cir. 2010)........................................................................... 23

*Sims v. BB & T Corp.*,
    2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ............................................................... 21

*Stanford v. Foamex L.P.*,
    263 F.R.D. 156 (E.D. Pa. 2009) ................................................................... Passim

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ............................................................... 18, 20

*Sweda v. Univ. of Pennsylvania*,
    923 F.3d 320 (3d Cir. 2019) ............................................................... 3

*Szczubelek v. Cendant Mortg. Corp.*,
    215 F.R.D. 107 (D.N.J. 2003) ............................................................... 22

*Thomas v. SmithKline Beecham Corp.*,
    201 F.R.D. 386 (E.D. Pa. 2001) ............................................................... 18, 25

*Von Moore v. Simpson*,
    1997 WL 570769 (N.D. Ill. Sept. 10, 1997) ............................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................... 19

**Statutes**

29 U.S.C. §1104(a)(D) ............................................................... 3
29 U.S.C. §1105(a) ............................................................... 4
29 U.S.C. § 1002(21)(A) ............................................................... 4
29 U.S.C. § 1002(34) ............................................................... 3
29 U.S.C. § 1104 ............................................................... 6, 29
29 U.S.C. § 1104(a)(1) ............................................................... 3
29 U.S.C. § 1104(a)(1)(A) ............................................................... 3
29 U.S.C. § 1104(a)(1)(B) ............................................................... 3
29 U.S.C. § 1109 and 1132 ............................................................... 1

**Regulations**

29 C.F.R. § 2510.3-102(a)(1) ............................................................... 5

Plaintiffs Lester Packer Sr., Lester Packer II, and Shawn Dyroff (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in support of their Motion for Class Certification.

## I.    INTRODUCTION

Plaintiffs' Complaint ("Complaint" or "¶") asserts claims under Sections 409 and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1109 and 1132, for breaches of fiduciary duties by Defendants[1] for failing to make required contributions to Glenn O. Hawbaker, Inc. Benefit Plan and Glen O. Hawbaker, Inc. Health and Welfare Plan (the "Plans"), during the proposed Class Period (defined below). Cases involving violations of ERISA are routinely certified in this Circuit. *See*, *e.g.*, *In re: Merck & Co., Inc., Sec., Derivative & ERISA Litig.*, MDL No. *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. CIV.A. *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. CIV.A. 05-1151SRC, 2009 WL 331426, at *10–12 (D.N.J. Feb. 10, 2009); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 DMC, 2012 WL 1964451 (D.N.J. May 31, 2012); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010); *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529 (E.D. Pa. 2019). Indeed, "[i]n light of the derivative nature of

---

[1] "Defendants" refers to Glenn O. Hawbaker, Inc., Board of Directors of Glenn O. Hawbaker, Inc., the Plan Administrator of the Glenn O. Hawbaker, Inc. Benefit Plan, and John Does 1-20.

ERISA § 502(a)(2) claims, [such] breach of fiduciary duty claims … are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).

Plaintiffs seek to certify the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(1):

> All current and former hourly wage employees who worked on prevailing wage contracts at Glenn O Hawbaker, Inc. ("Hawbaker" or "GOH") within the Commonwealth of Pennsylvania during the period September 1, 2012 through December 31, 2018" (the "Class").

Additionally, Plaintiffs respectfully request that this Court appoint them as representatives for the certified Class, and appoint their counsel, Edelson Lechtzin LLP ("Edelson") and Donovan Litigation Group, LLC ("Donovan"), as Class Counsel.

Plaintiffs' claims satisfy the requirements of Fed. R. Civ. P. 23(a) and (b) because: (1) there were more than fourteen hundred participants in the Plan affected by Defendants' wrongdoing; (2) Plaintiffs are typical of the participants; (3) common issues abound regarding the manner in which Defendants managed wages and the Plan's assets; and (4) Plaintiffs have retained experienced class counsel and are adequate to represent the interests of the class. Thus, certification is warranted.

## II.   STATEMENT OF FACTS

### A.   The Plan

The Glenn O. Hawbaker, Inc. Benefit Plan is a single-employer "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to those accounts, and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participant's account. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account. ¶ 20.

### B.   Defendants Breached Their ERISA Fiduciary Duties by Failing to Make Required Contributions to Participant Accounts

To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. 29 U.S.C. § 1104(a)(1). These twin fiduciary duties are "the highest known to the law." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 333 (3d Cir. 2019). As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans, and the Plan's investments, "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B). ¶ 26. Moreover, under 29 U.S.C.

§1104(a)(D), a fiduciary must discharge his duties in accordance with the documents and instruments governing the plan. ¶ 29. ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. Specifically, ERISA § 405(a), 29 U.S.C. §1105(a) provides a private cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. ¶ 30

This case concerns ERISA's duty of loyalty, which requires fiduciaries to act with an "eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) (internal citations omitted). "Perhaps the most fundamental duty of a [fiduciary] is that he [or she] must display…complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id*. at 224 (quotation marks and citations omitted). ¶ 28.

During the proposed Class Period Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan, Plaintiffs, and the proposed Class, including by failing to abide by the terms of the Plan in making contributions to participant accounts. Specifically, under Section 3.06 of the Plan document, both employee contributions and employer contributions must be allocated to the participant account for whom such contributions are made:

> Elective Deferral Contributions **shall be allocated to the Participants for whom such Contributions are made** under the EMPLOYER

CONTRIBUTIONS SECTION of this article. Such Contributions shall be allocated when made and credited to the Participant's Account.

Matching Contributions **shall be allocated to the persons for whom such Contributions are made** under the EMPLOYER CONTRIBUTIONS SECTION of this article. Matching Contributions shall be allocated no later than the last day of the Plan Year.

Plan Document, Art. III, Section 3.06. ¶ 36 (emphasis added).[2]

The ERISA Regulations promulgated by the Employee Benefits Administration of the U.S. Department of Labor ("DOL") reinforce the compulsory nature of promptly allocating employee and employer contributions to participant accounts in defined contribution plans (like the Plan). ¶ 38. For instance, 29 C.F.R. § 2510.3-102(a)(1) defines "plan assets" as "amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, **as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets**." ¶ 39 (Emphasis added). Defendants' failures to comply with the terms of the Plan and applicable DOL regulations by failing to make required contributions to Plaintiffs' and the Class's individual 401(k) accounts within the strict time

---

[2] Pertinent here, "back pay" is considered "Compensation" under the Plan: "Back pay … shall be treated as Compensation for the Plan Year to which the back pay relates to the extent the back pay represents wages and compensation that would otherwise be included in this definition." Art. I, Section 1.02—Definitions; ¶ 37.

limitations for making such contributions and in required the amounts (detailed below), to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duties of prudence and loyalty, in violation of 29 U.S.C. § 1104. ¶ 41.

### C.    Background Regarding Prevailing Wage Laws

When a contractor is awarded a public works projects subject to the Pennsylvania Prevailing Wage Act ("PWA") or the Davis-Bacon Act ("DBA"), the contractor agrees that it will pay its workers in accordance with prevailing wage laws. To meet this agreement and get paid for the project, the contractor must submit sworn certified payroll reports to contracting government agencies attesting that the contractor paid its workers on the project in accordance with prevailing wage laws. ¶ 44. All workers must be paid the applicable wage determination rate for all wages and benefits earned in each classification each week. Each wage determination consists of both an hourly base rate and an amount allowable as a fringe benefit credit. ¶ 45.

The fringe benefit component is intended to offset the employers' total wage obligation by crediting them for the costs incurred in providing benefits to prevailing wage workers in lieu of cash wages. Contractors have three options for paying the fringe benefit component: (1) pay the fringe benefit to the worker entirely in cash wages; (2) contribute the full amount to bona fide fringe benefit programs, such as health insurance or retirement plans; or (3) use a combination of cash and

contributions to bona fide benefits. However, the entire fringe benefit component must be used for the sole benefit of the worker. ¶ 46. Contractors may not use prevailing wage fringe benefit funds to benefit anyone other than the worker who earned the money.[3] ¶ 47.

Every week, contractors working on public works projects must submit certified payrolls, which are sworn certifications attesting that wages and fringe benefits were paid in accordance with prevailing wage laws, to the contracting government entity for every public works project as part of their application for payment. ¶ 49.

### D.    Defendant's Misrepresentations to Hourly Employees

Defendant's Employee Manual contained numerous representations and promises about employee benefits, including short-term and long-term disability insurance, health insurance, and profit-sharing plan and 401(k) plans. ¶ 50. For publicly funded projects, Defendants promised that each employee would be paid in cash for any difference between the cost attributable for associated fringe benefits and the requirements of the prevailing wage laws, including PWA and DBA:

For employees working on public sector construction jobs funded using

---

[3] Both the PWA and the DBA require employers to annualize fringe benefit credits taken for contributions to employee benefits, to ensure that the employers are only offsetting their prevailing wage obligations by the proportion of contributions attributable to time the employees spend on public works projects. Thus, an employer may only claim a fringe benefit credit for the actual hourly rate of contributions for all hours worked in a year by each worker on both prevailing wage and non-prevailing wage work. ¶ 48.

Federal dollars, GOH [Defendant] complies with Davis-Bacon Act requirements by providing each employee working on public sector contracts health care and retirement benefits, comparable to, or exceeding, the requirements of Davis-Bacon. If the fringe requirement for a given year under the Davis-Bacon regulations is more than the value of the Company's benefits, the difference is paid in cash to the employee. In other words, the employee never receives a fringe lower than the law requires. [¶ 51.]

In Section **1.12** of the Employee Manual, Defendant represented that the health and welfare and pension fringes it provided "through our group benefit and profit sharing plans" were compliant with prevailing wage laws and, thus, equivalent to the cash difference between the hourly wages paid and the applicable hourly prevailing wage. ¶ 52. The Employee Manual further represented, in Section **1.0.1**, that: "To the extent these policies conflict with any contract entered into by GOH, the terms of the contract prevail." ¶ 53. Of necessity, GOH's representations, policies, and agreements with its employees incorporate by reference all of the agency promises to pay the prevailing wage to prevailing wage workers and the workers are, at a minimum, the intended third-party beneficiaries of the promises in the public agency contracts. ¶ 54.

### E.    Defendants' Scheme to Underpay Workers

Hawbaker claimed to be paying its prevailing wage workers by creating and submitting false and misleading fringe benefit letters to each contracting government agency for each project. Those letters listed each job classification for a particular project and a representation as to how workers in each classification would be paid.

8

Such letters would list a "Base Rate," which is the hourly rate workers would receive in the paychecks. For the fringe benefit component, such letters included the following columns: "Health & Welfare," "Cash Pd In addition to Health," "Pension," and "Total Fringes." The fringe benefit letters submitted by GOH during the Class Period all listed the amount of cash pad in addition to health as zero. The letters also listed the same health and welfare cost for all job classifications on the project. The letters listed the amount for pension that varied by job classification. ¶ 55.

Hawbaker payroll and accounting employees have explained how GOH calculated the amounts listed on the fringe benefit letters and how those amounts differed from what was recorded in the company's payroll and accounting system. Wage determinations list the total hourly cash equivalent of fringe benefits due to workers in each job classification. In its payroll and accounting system, GOH attributed 50% of the total fringe amount to health and welfare and 50% to pension. In the fringe benefit letter, GOH reported that it was allocating 50% of the fringe amount listed in the wage determination to pension. ¶ 56. The health and welfare amount reported in the fringe benefit letters, however, bore no relation to the fringe benefit amount listed on the wage determination. Instead, GOH concocted an exaggerated health and welfare hourly credit by including inflated health insurance costs and nonqualifying expenses in its health and welfare credit calculation. The

figure GOH reported in the fringe benefit letter under "Total Fringes" was the sum of the inflated hourly health and welfare rate and the hourly pension rate. The pension amount listed on the fringe benefit letter per employee per hour was put into one big pot and then used to fund all employees', executives', and owners' pension accounts. ¶ 57.

What GOH reported on the fringe benefit letters never reflected how GOH was actually using the prevailing wage workers' money. In actuality, GOH was stealing its prevailing wage workers' pension and health and welfare money. GOH used its prevailing wage workers' fringe benefit funds to lower its costs, thereby helping GOH to win more government bids, and increasing the company's reported profits. ¶ 58. And GOH used its prevailing wage workers' contributions to fund all GOH profit sharing and 401(k) contributions for all employees, including hundreds of non-prevailing wage employees. ¶ 60.

Hawbaker's retirement benefit program has two components: a profit-sharing component and an elective contribution 401(k) component. GOH represented to its employees that the profit-sharing program was designed to reward eligible employees and that contributions were funded by the company. While GOH claimed it was funding the profit-sharing plan, it was actually using fringe benefit money from the prevailing wage workers' wages to foot the bill. Moreover, not all employees were eligible to receive profit sharing contributions – to receive them, an

employee must have worked a minimum number of hours and be employed on the last day of the calendar year. ¶ 61.

On the fringe benefit letters submitted to contracting government agencies, GOH claimed it was contributing as much as $15.12 per hour into prevailing wage workers' pension accounts, which, according to law, must be made to workers' accounts no less frequently than quarterly. In its payroll and accounting system, GOH allocated half of the total fringe amount listed on the wage determination toward the profit sharing and 401(k) plan. However, instead of paying that money over to the retirement account owned by the worker who earned the money (including Plaintiffs herein), GOH transferred that money into one big, unallocated account. The money sat in that unallocated account throughout the year. Just prior to the end of the first quarter of the following year, that pot of prevailing wage workers' money was distributed to all GOH employees', executives', and owners' retirement accounts. ¶ 63.

Instead of putting all the prevailing wage workers' retirement funds into the profit sharing and 401(k) account of the worker who actually earned it, GOH stole that money and used it to pay for all GOH employees', executives', and owners' retirement savings. As a result, the company's prevailing wage workers (including Plaintiffs) have been left with short-changed profit sharing and 401(k) accounts. Further, because of this theft, the prevailing wage workers were short-changed on

the wages they were actually paid, as those cash wages were diminished due to the false representation of fringe benefit amounts that were not paid to Plaintiffs and similarly situated employees. ¶ 65.

Since GOH was claiming the full fringe benefit credit for all prevailing wage workers per hour, it was obligated to provide that amount in fringe benefits to those workers. In reality, GOH was only paying a fraction of the required amount in the form of health and welfare benefits for prevailing wage workers and was stealing the rest to pay for the health and welfare benefits of all of the remaining non-prevailing wage employees and executives at the company. GOH disguised this theft by reporting to government agencies that it was paying well in excess of what was required by law, using an hourly health and welfare figure that was based on grossly inflated costs and nonqualifying expenses. ¶ 67. Prior to 2019, GOH accounting employees conducted a so-called "Benefits Analysis" annually to determine the hourly credit the company would take for providing health and welfare benefits to employees. But many of the costs GOH included in this calculation were either grossly inflated or were not allowable costs. GOH also failed to employ an appropriate annualization calculation. ¶ 68.

Based on these false numbers, GOH reported the hourly cost of its health and welfare benefits to be between $14 and $19, depending on the year. By claiming these inflated credits when submitting fringe benefit letters and certified payroll

records to public agencies, GOH obscured the reality: the actual cost of providing health and welfare benefits to employees ranged from $4 to $7 per hour and was heavily subsidized by funds stolen from prevailing wage workers, including Plaintiffs. ¶ 69.

GOH operates a self-funded health insurance plan. This means that GOH pays health insurance claims itself instead of paying insurance premiums to an insurance company that would then be responsible for paying claims. Between 2015 and 2018, GOH contracted with a third-party administrator, Cigna, to administer its health insurance plan. Beginning in 2018, GOH contracted with Aetna to serve as a third-party administrator. ¶ 70. By contracting with a third-party administrator, like Cigna or Aetna, companies with self-funded health insurance plans receive the benefit of the third-party administrator's network of participating providers. Participating providers agree to accept a set payment, which is usually much less than the provider's typical fee, as full payment. Thus, the amount the company pays out in claims is substantially lower than the amount billed on claims. These agreements vastly lower self-funded insurance plans' costs. ¶ 71.

When calculating the hourly cost of providing health benefits, GOH used the total amount of claims considered, instead of what it actually paid out, in its Benefits Analysis calculation. By using the total claims considered amount instead of the claims actually paid amount, GOH took credit not only for millions of dollars in

contractual write-offs that were never paid by anyone, but also for money paid by the prevailing wage workers and other employees in the form of deductibles, copays and employee payroll contributions. Between 2015 and 2018, GOH included over $50 million in costs it never paid into the health and welfare calculations. ¶ 72.

GOH also included several ineligible expenses in the health and welfare hourly cost calculation. GOH wrongly included the cost of paying the company's own human resources employees in the health and welfare calculation. While the PWA and the DBA allow contractors with self-insured plans to include external administrative costs, like third-party plan administrator's fees, in their health and welfare cost calculation, they are not permitted to include internal administrative costs, including employee wages. GOH included the cost of paying wages for GOH employees who purportedly had some involvement in benefits administration, plus ten percent to cover employer payroll taxes. Between 2015 and 2018, GOH added approximately $1.8 million in ineligible personnel wages to its health and welfare cost calculation. ¶ 73. GOH also included a line item called "Additional Costs that support Plan" in its health and welfare cost calculation. Those additional costs had nothing to do with health and welfare. Instead, GOH added 401(k) match funds into its health and welfare cost calculation. Between 2015 and 2018, GOH lumped over $3.9 million of 401(k) matching funds into its health and welfare calculation. ¶ 74.

Moreover, GOH ignored employee health insurance payroll contributions when calculating the health and welfare cost credit. Depending on the health plan option the worker selected, many GOH workers were required to make contributions toward the health plan. But these contributions, totaling over $10.8 million, were simply ignored by GOH. ¶ 75. GOH also included the cost of providing all of its employees with paid time off in the health and welfare cost credit calculation. Although some of that money was allocated toward paid time off for prevailing wage workers, GOH failed to annualize that benefit as required by law. Instead of using that total amount for the calculation, GOH was required to use an annualized, per-worker cost based on the amount of paid leave prevailing wage workers actually used in the calculation. ¶ 76. Using the actual amount of money GOH paid out in health insurance claims, removing ineligible expenses, and giving workers credit for their own payroll contributions, the actual hourly health and welfare cost GOH was required to report to public agencies was:

| YEAR | GOH H&W HOURLY RATE | ACTUAL H&W HOURLY RATE | DIFFERENCE |
|------|---------------------|------------------------|------------|
| 2015 | $14.65 | $5.03 | -$9.62 |
| 2016 | $14.01 | $4.19 | -$9.85 |
| 2017 | $17.50 | $5.23 | -$12.27 |
| 2015 | $18.65 | $6.67 | -$11.98 |

## F.    Plaintiffs Assert Viable Claims Under ERISA

Each of the named plaintiffs was a participant in the Plan during the Class Period and worked on prevailing wage projects in which Hawbaker was obligated to

pay its employees the "prevailing wage" throughout the duration of the project. Plaintiffs on behalf of themselves and all plan participants that worked on prevailing wage contracts seek compensation from Defendants for breaches of their fiduciary duties by failing to make required contributions to the Plans during the Class Period. Plaintiffs' Complaint asserts the following claims: (1) a claim for Relief against Defendant Hawbaker and the Plan Administrator ("Prudence Defendants") for breaches of fiduciary duties of loyalty and prudence for their failure to make required contributions to Plaintiffs' and the Class's individual 401(k) accounts within the strict time limitations for making such contributions and in required amounts (¶ 99.); and (2) a claim against Defendant Hawbaker and the Board Defendants for breach of their fiduciary duties to monitor the Prudence Defendants because they failed to monitor and evaluate the performance of the Plan Administrator or have a system in place for doing so, failing to monitor processes by which the Plan contributions were made to participant accounts and failing to remove and replace the Plan Administrator whose performance was inadequate in that it failed to abide by the terms of the Plan in making contributions to participant accounts, to the detriment of the Plan and Plan participants' retirement savings. ¶ 107. As set forth below, these claims here are ideally suited for class treatment.

## III.   ARGUMENT

### A.  Standard for Class Certification

A proposed class must meet the four requirements of Fed. R. Civ. P. 23(a) and

one of the requirements of Fed. R. Civ. P. 23(b). *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d at 596. The Supreme Court has acknowledged the virtues of the class action device. *See*, *e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ("[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142, n.9 (1985) (noting Congress expressed intent ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").

In light of the derivative nature of claims brought on behalf of a plan under ERISA Section 502(a)(2), numerous courts in this Circuit have found these types of claims well-suited for class treatment.[4] The same result should apply here.

## B. The Proposed Class Satisfies the Requirements of Fed. R. Civ. P. 23(a)

To be certified, a class must first satisfy the four basic prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

---

[4] *See*, *e.g.*, *Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626 (E.D. Pa. 2021), *aff'd,* 36 F.4th 124 (3d Cir. 2022); *Guidry v. Wilmington Tr.*, 333 F.R.D. 324 (D. Del. 2019), *Cunningham*, 387 F. Supp. 3d 529; *Moore*, 268 F.R.D. 530; *Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D. Pa. 2009); *In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, 2009 WL 331426.

representation. Fed. R. Civ. P. 23(a); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 596. Plaintiffs have established all four elements here.

### 1. The Proposed Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1)

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). When there "are thousands of participants in [a] plan in any given year," the court "should make common sense assumptions regarding numerosity." *In re Ikon Off. Sols., Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) ("*In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457"); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001). Here, numerosity is clearly satisfied because there were 1,400 plus participants during the Class Period,[5] which is more than sufficient to satisfy Rule 23(a)(1). *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (generally 40 members is sufficient).

### 2. The Class Satisfies the "Commonality" Requirement of Rule 23(a)(2)

In order to obtain certification, Plaintiffs must also demonstrate the existence of common questions of law or fact. "Rule 23(a)(2)'s commonality requirement requires the putative class members 'share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir.

---

[5] *See* Annual Return/Report of Employee Benefit Plan on Form 5500 for 2018, at p. 3, available at: https://efast2-filings-public.s3.amazonaws.com/prd/2019/10/14/20191014125329P030053203741001.pdf.

2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). Examples of commonality are when class members challenge the same conduct of the defendants, or when plaintiffs show class members suffered the same injury. *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. 2012) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). However, "[a] finding of commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification,'" *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002) (internal citation and quotation omitted). "ERISA actions have sufficient commonality when class members share questions of 'whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, [and] whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result.'" *Karg v. Transamerica Corp.*, No. 1:18-CV-134-CJW-KEM, 2020 WL 3400199, at *2 (N.D. Iowa Mar. 25, 2020).

Here, the overarching questions of law or fact applicable to all Plan participants are whether Defendants breached fiduciary duties owed to the Plan and its participants by failing to pay properly and timely the correct amount of wages and benefits. *See Wal-Mart Stores, Inc.*, 564 U.S. at 355; *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *3 (where the complaint alleged a breach of fiduciary duties owed under ERISA, the determination involves common

19

issues of law or fact). This action also presents many other common questions of law or fact, applicable to all members of the Class, including: (1) whether Defendants were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties and whether the Plan and the Participants were injured by such breaches; (3) whether the Board Defendants failed to adequately monitor the Plan Administrator and other fiduciaries to ensure the Plan was being managed in compliance with ERISA; and (4) whether the Class is entitled to damages. "All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants." *Von Moore v. Simpson*, No. 96 CV 2971, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997). Consequently, Plaintiffs demonstrate a "level of commonality more than sufficient under Rule 23(a)(2)." *In re Honeywell Int'l Inc. Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002).

### 3. Plaintiffs' Claims Satisfy the "Typicality" Requirement of Rule 23(a)(3)

Plaintiffs also must show the "claims or defenses of the representative parties are typical of the claims or defenses of the class." As the Court noted in *Moore*:

> The typicality requirement of Rule 23(a)(3) "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir.2001); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir.2001). The court must determine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of

the class." *Beck v. Maximus*, 457 F.3d 291, 295–96 (3d Cir.2006) …

*Moore*, 268 F.R.D. at 535. Further, "complete factual similarity is not required [to establish typicality]; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 598 (internal quotation omitted).

Here, Plaintiffs easily satisfy the typicality prong of Rule 23 because they are all Plan participants who were not paid the correct amount of wages and benefits. *See Stanford*, 263 F.R.D. at 167 (typicality established "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members"); *Sims v. BB & T Corp.*, No. 1:15-CV-732, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017), at*4 (M.D.N.C. Aug. 28, 2017) (same). Like Plaintiffs, each Class member was a participant in the Plan during the Class Period and they sustained injury caused by Defendants' fiduciary breaches in that they were underpaid wages and benefits. Since resolution of Plaintiffs' claims will equally impact the claims of the Plan and the proposed Class, the typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied.

### 4. Plaintiffs More Than Satisfy Rule 23(a)(4)

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The rule 'tests the qualifications of class counsel and the class representatives.  It also aims to root out

conflicts of interest within the class to ensure that all class members are fairly and adequately represented in negotiations.'" *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *5 (E.D. Pa. Sept. 24, 2019) (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016), *as amended* (May 2, 2016), *as amended* (May 2, 2016)).  This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified…." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Here, both prongs of the adequacy test are met.

The core of the analysis of the first prong is whether the Named Plaintiffs have interests antagonistic to those of the class. Rule 23(a)(4) "mainly seeks 'to uncover conflicts of interest between named parties and the class they seek to represent.'" *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) ("*New Directions*") (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532). "A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard,'" *Id*. (quoting *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 119 (D.N.J. 2003)), and "[t]his is a relatively low bar." *Bordeaux v. LTD Fin. Servs., L.P.*, No. CV2160243KSHCLW, 2017 WL 6619226, at *4 (D.N.J. Dec. 28, 2017) (citing *New Directions Treatment Services*, 490 F.3d at 313). Even so, Plaintiffs have demonstrated a solid understanding of the

claims at issue.

Here, Named Plaintiffs have no interests antagonistic to those of the absent Plan participants. Named Plaintiffs seek to establish Defendants breached their fiduciary duties by failing to pay the correct amount of wages and benefits which caused the Plan and its participants an economic loss. As such, each member of the proposed Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plan because of Defendants' conduct. The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4), based upon the factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).

Plaintiffs clearly satisfy the adequacy requirement of Rule 23(a)(4) here because there are no conflicts of interest between the Plaintiffs and the Class as a whole; in fact, to the contrary, their interests are unified with those of the Class. Plaintiffs must prove the same wrongdoing by Defendants as the absent Class members to establish Defendants' liability. Plaintiffs, like the putative Class members, were participants in the Plan during the Class Period and seek Plan-wide relief for identical alleged breaches of fiduciary duty by Defendants that equally affected all participants in the *Stanford*, 263 F.R.D. at 171 ("Because Stanford is challenging the same course of conduct and seeking the same relief as the rest of the absent class members, the court finds that Stanford's interests are sufficiently aligned

with the those of the class."); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009) (same).

Moreover, Plaintiffs have been and remain ready, willing, and able to fulfill the duties required of a Class representative. Up to this point in this litigation, they have reviewed the allegations in the Complaint and provided information to counsel prior to the initiation of this action; provided documents and assisted counsel in discovery matters; and maintained regular communication with counsel in order to stay informed about the case. *See* Declaration of Lester Packer Sr. ("Packer Sr. Decl.") ¶ 4 (attached hereto as Exhibit A); Declaration of Lester Packer II ("Packer II Decl.") ¶ 4 (attached hereto as Exhibit B); Declaration of Shawn Dyroff ("Dyroff Decl." ¶ 4 (attached hereto as Exhibit C).

Further, they are committed to seeing this litigation through to the end and are willing to undertake any responsibilities required of them as class representatives, including continuing to assist their attorneys in any way requested, participating in any mediations and attending and testifying at trial, if necessary. *See* Packer Sr. Decl. ¶ 3; Packer II Decl. ¶ 3; Dyroff Decl. ¶ 3. Plaintiffs' commitment to this litigation is amply demonstrated and this commitment makes them ideally suited to serve as class representatives. The requirements of Rule 23(a)(4) are clearly met.

With respect to the adequacy of the Proposed Class Counsel, it is worth noting that, as demonstrated in this litigation to date, Edelson and Donovan have and will

continue to vigorously prosecute this action on behalf of Plaintiffs and the Class as a whole to obtain the best possible recovery for the Plan. Among other things, Edelson and Donovan have engaged in extensive discovery in this matter and are experienced class action counsel. *See* Declaration of Marc H. Edelson ("Edelson Decl.") ¶¶ 3-8, attached hereto as Exhibit D and Declaration of Michael Donovan ("Donovan Decl.") ¶¶ 2-6 attached hereto as Exhibit E.

### 5. The Proposed Class is Adequately Defined and Clearly Ascertainable

Plaintiffs also have established the proposed class is readily ascertainable. *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 392 (3d Cir. 2015) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013)). Here, Plaintiffs' have clearly defined the proposed Class (*see* ¶ 83), which can be readily ascertained from data kept by the Plan's recordkeeper.

### C. The Class May be Properly Certified Under Fed. R. Civ. P. 23(b)(1)

Although Plaintiffs need satisfy only one of the subsections, a court may certify an action under each subsection of Rule 23(b) that is satisfied. *See, e.g.*, *Thomas*, 201 F.R.D. at 396–97 (noting "[b]ecause neither the plaintiffs nor the defendants have expressed a preference for certification under Rule 23(b)(1)(A), 23(b)(1)(B), or 23(b)(2), I will determine whether certification is appropriate under each section," and certifying under Rules 23(b)(1)(A), 23(b)(1)(B) and 23(b)(2)). Here, the proposed Class may be certified under Rule 23(b)(1)(A) and/or (B), as

numerous courts have done in similar cases. *See* fn. 2, *supra*; *see also* Edelson Decl.

Exhibit 1.[6]

Under Rule 23(b)(1), a class may be certified if:

(1)     prosecuting separate actions by or against individual members of the class would create a risk of

(A)     inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re Ikon Office Solutions, Inc.*, 191 F.R.D. at 466. Numerous courts have held, in recognition of the derivative nature of ERISA Section 502(a)(2) claims, that breach of fiduciary duty claims brought under this statutory provision are paradigmatic examples" of claims appropriate for certification under Rule 23(b)(1). *See*, *e.g.*, *In re Schering Plough*

---

[6] Plaintiffs only address class certification under Rule 23(b)(1) because it is clear certification is proper under Rule 23(b)(1), and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1) …." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). However, in the event further analysis is required, the proposed class also satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because the common questions "predominate," and class treatment is "superior".

*Corp. ERISA Litig.*, 589 F.3d at 604; *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-563 (JMF), 2019 WL 2428631, at *9 (S.D.N.Y. June 11, 2019).

Certification under both sections of Rule 23(b)(1) is common in breach of fiduciary duty cases because of the defendants' alleged "unitary treatment" of proposed class members. *In re Ikon Office Solutions, Inc.*, 191 F.R.D. at 466 (internal citation omitted); *see also* Fed. R. Civ. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment.

### 1. Certification Under Rule 23(b)(1)(B) is Most Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous cases because it is particularly suited for cases alleging the breach of fiduciary obligations to plaintiffs. Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (same); *Moore*, 268 F.R.D. at 538 (same).

Because of the distinctive representative nature of these ERISA claims and the remedial provisions available, these actions are particularly suited for class

treatment under Rule 23(b)(1)(B). *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 478 (E.D. Pa. 2007) (certifying Rule 23(B)(1)(B) class in an ERISA fiduciary duty case); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. at 466 (granting class certification under Rule 26(b)(1)(B) where, because "of the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."); *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *5 (E.D. Pa. Aug. 31, 2018) (same).

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. *See Massachusetts Mut. Life Ins. Co.*, 473 U.S. at 139–40. Thus, the proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class. Accordingly, class certification should be granted under Rule 23(b)(1)(B), consistent with the overwhelming weight of case law.

## 2.  Certification is Also Appropriate under Section 23(b)(1)(A)

Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike … or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem Products, Inc.*, 521 U.S. at 614 (citation omitted). This is precisely such a case because the fiduciary duties imposed by ERISA are "duties with respect to a plan" which protect the "interest of the

participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104. In discharging

their duties to the Plan, Defendants, as fiduciaries, were obligated to treat all

participants (and all class members) alike. However, once a court determines a class

of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies

subsection (b)(1)(B) of Rule 23, it is not necessary to consider the alternative

subsections of Rule 23(b). *See Koch v. Dwyer*, No. 98 CIV. 5519 (RPP), 2001 WL

289972, at *5 (S.D.N.Y. Mar. 23, 2001). Thus, if the Court determines certification

is appropriate under Rule 23(b)(1)(B), the inquiry need go no further.[7]

### D.  Edelson and Donovan Will Adequately Represent the Class

Rule 23(g) complements the requirement of Rule 23(a) class representatives

adequately represent the interests of class members by focusing on the qualifications

of class counsel. Rule 23(g)(1)(A) instructs the court to consider, among other

things: (1) the work counsel has done in identifying or investigating potential claims

in the action; (2) counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action; (3) counsel's knowledge of

the applicable law; and (4) the resources counsel will commit to representing the

class. Fed. R. Civ. P. 23(g)(1)(A). Here Edelson and Donovan satisfy all

---

[7] Nevertheless, it is common for courts to certify ERISA class actions under both subsections 23(b)(1)(B) and 23(b)(1)(A). *See, e.g., Stanford*, 263 F.R.D. at 173–174; *In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, 2009 WL 331426, at *10–11. Thus, the Court may also certify the Class under Rule 23(b)(1)(A).

prerequisites. *First*, the firms have done significant work identifying and investigating potential claims in this action. Edelson Decl. ¶ 2,9; Donovan Decl. ¶ 2. This work included requesting documents from the Company pursuant to ERISA § 104(b)(4) and interviewing class members. Edelson Decl. ¶ 2; Donovan Decl. ¶ 2. *Second,* the firms have significant experience handling class actions and ERISA matters and have knowledge of the applicable law. Edelson Decl. ¶¶ 2-9; Donovan Decl. ¶¶ 3-5. *Third*, the firms will commit the necessary resources to representing the class. Edelson Decl. ¶9; Donovan Decl. ¶ 6. Accordingly, appointment of Edelson and Donovan as Class Counsel is warranted. *See Karg*, 2020 WL 3400199, at *3.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request this Court certify this action as a class action under Fed. R. Civ. P. 23(a) and (b)(1), appoint Plaintiffs Lester Packer Sr., Lester Packer II, and Shawn Dyroff as Class Representatives, and appoint Edelson Lechtzin LLP and Donovan Litigation Group, LLC as Class Counsel.

Dated: January 16, 2023                    Respectfully submitted,

                                           */s/Eric Lechtzin*
                                           Eric Lechtzin
                                           Marc H. Edelson
                                           EDELSON LECHTZIN LLP
                                           411 S. State Street, Suite N-305
                                           Newtown, PA 18940
                                           Telephone: (215) 867-2399
                                           elechtzin@edelson-law.com
                                           medelson@edelson-law.com

                                           Michael D. Donovan
                                           DONOVAN LITIGATION GROUP, LLC
                                           1885 Swedesford Road
                                           Malvern, PA 19355
                                           Telephone: (610) 647-6067
                                           mdonovan@donovanlitigationgroup.com

                                           *Counsel for Plaintiffs and the Proposed
                                           Class*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER PACKER SR., LESTER PACKER II, and SHAWN DYROFF, individually and situated, on behalf of the GLENN O. HAWBAKER, INC. BENEFIT PLAN,<br><br>                              Plaintiffs,<br><br>        v.<br><br>GLENN O. HAWBAKER, INC., BOARD OF DIRECTORS OF GLENN O. HAWBAKER, INC., the PLAN ADMINISTRATOR OF THE GLENN O. HAWBAKER, INC. BENEFIT PLAN, and JOHN DOES 1-20,<br><br>                              Defendants. | **CASE NO. 4:21-cv-01747**<br><br>Matthew W. Brann, C.J.<br><br>CLASS ACTION |

## CERTIFICATION OF WORD COUNT AND
## COMPLIANCE WITH LOCAL RULE 7.8

    1.   This brief contains 7,295 words, excluding the parts of the brief exempted from the word count by LR 7.8 (b)(2) and (3).

    2.   This brief complies with the font, spacing, and type size requirements stated in LR 5.1(c).

                    Respectfully submitted,

Dated: January 16, 2023          */s/Eric Lechtzin*
                              Eric Lechtzin
                              Marc H. Edelson
                              EDELSON LECHTZIN LLP
                              411 S. State Street, Suite N-305

Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com
medelson@edelson-law.com

Michael D. Donovan
DONOVAN LITIGATION GROUP, LLC
1885 Swedesford Road
Malvern, PA 19355
Telephone: (610) 647-6067
mdonovan@donovanlitigationgroup.com

*Counsel for Plaintiffs and the Proposed
Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on January 16, 2023, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.


*/s/ Eric Lechtzin* _____
                    Eric Lechtzin