IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER PACKER, SR., LESTER PACKER, II, and SHAWN DYROFF, *individually and on behalf of the Glenn O. Hawbaker, Inc. Benefit Plan*,<br><br>    Plaintiffs,<br><br>    v.<br><br>GLENN O. HAWBAKER, INC., BOARD OF DIRECTORS OF GLENN O. HAWBAKER, INC., PLAN ADMINISTRATOR OF THE GLENN O. HAWBAKER, INC. BENEFIT PLAN, and JOHN DOES 1–20,<br><br>    Defendants. | No. 4:21-CV-01747<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

### JUNE 6, 2023

In this putative class action, the Plaintiffs allege that their employer—the heavy construction contractor Glenn O. Hawbaker, Inc.—stole their pension and health and welfare benefits, as well as those of their coworkers similarly assigned to public, prevailing wage projects. Accordingly, the Plaintiffs have brought claims under the Employee Retirement Income Security Act of 1974 ("ERISA") against Hawbaker, the Hawbaker Board of Directors, and the Administrator of Hawbaker's employee benefits plan. They now move for class certification. Because they have

satisfied the requirements of Federal Rule of Civil Procedure 23, the motion is granted.

I. **BACKGROUND**

On April 8, 2021, the Office of the Attorney General for the Commonwealth of Pennsylvania filed a criminal complaint against Hawbaker, alleging that the company failed to provide its employees working prevailing wage jobs with the required "fringe benefits" under Hawbaker's employee benefits plan (the "Hawbaker Benefit Plan" or "Plan").[1] Specifically, the Attorney General asserted that Hawbaker stole "its prevailing wage workers' pension and health and welfare money," using those "fringe benefit funds to lower its costs, thereby helping [it] win more government bids, and increase the company's profits."[2] Between 2015 and 2018, the fringe benefit funds Hawbaker allegedly stole from its prevailing wage workers totaled more than $20 million.[3] The Attorney General brought four charges of Theft by Failure to Make Required Disposition of Funds Received, in

---

[1] *See* Doc. 30-1 (Hawbaker Criminal Complaint & Affidavit of Probable Cause). Constructor contractors like Hawbaker that work on certain public works projects in Pennsylvania are subject to the Davis-Bacon Act and its Pennsylvania corollary, the Prevailing Wage Act. *See id.* at 8. As explained in the probable cause affidavit attached to the Attorney General's criminal complaint, those laws "create a level playing field by ensuring that every bidder on a project that received federal or state funds pays the same wage rates" (i.e., the "prevailing wage"). *Id.* The prevailing wage determinations "consist[] of both an hourly base rate and an amount allowable as a fringe benefit credit." *Id.* at 9. The fringe benefit credit allows employers to offset the costs they incur for providing certain employee benefits—such as health insurance, retirement plans, or paid time off. *Id.*
[2] Doc. 30-1 (Hawbaker Criminal Complaint & Affidavit of Probable Cause) at 12.
[3] *Id.* at 21.

violation of 18 Pa. C.S. § 3927(a)—one claim for each year between 2015 and 2018.[4]

In August 2021, Hawbaker pleaded *nolo contendere* to all four counts, effectively accepting punishment for the offenses without admitting to the facts alleged.[5] As part of the plea agreement, Hawbaker committed to "pay restitution for the charged period in the amount of $20,696,453.00 to affected victims."[6] Attached to the plea agreement was a restitution table listing 1,262 prevailing wage workers, with the restitution amount owed itemized by worker.[7]

Two months later, the Plaintiffs—Lester Packer Sr., Lester Packer II, and Shawn Dyroff—initiated the instant action.[8] All three men worked at Hawbaker between 2012 and 2018, with each dedicating at least 95 percent of their work to prevailing wage projects.[9] The Plaintiffs styled their Complaint as a putative class action, bringing on behalf of all "current and former hourly wage employees who worked on prevailing wage contracts at Hawbaker within the Commonwealth of Pennsylvania during the period September 1, 2018, though December 31, 2018,"

---

[4] *Id*. at 2–3, 21.
[5] *See* Doc. 30-2 (Hawbaker Plea Agreement); *see also United States v. Poellnitz*, 372 F.3d 562, 568 (3d Cir. 2004) ("Under Pennsylvania law, '[a]lthough the effect of a plea of *nolo contendere* is equivalent to a plea of guilty, the import of the pleas is not the same. In pleading *nolo contendere*[,] the defendant does not admit his guilty, but merely consents to being punished as if he were guilty.'" (quoting *Commonwealth v. Gunter*, 771 A.2d 767, 773 (Pa. 2001) (Cappy, J., concurring)).
[6] Doc. 30-2 (Hawbaker Plea Agreement) at 3.
[7] *See* Doc. 32 (Hawbaker Restitution Table – SEALED).
[8] *See* Doc. 1 (Compl.).
[9] *Id*. ¶¶ 8–9; *see also* Doc. 27-2, Ex. A (Jan. 10, 2023, L. Packer, Sr. Decl.); Doc. 27-3, Ex. B (Jan. 10, 2023, L. Packer II Decl.); Doc. 27-4, Ex. C (Jan. 10, 2023, S. Dyroff Decl.).

claims for breach of fiduciary duty and failure to adequately monitor other fiduciaries against Hawbaker, its Board of Directors, and the Administrator of the Hawbaker Benefit Plan.[10]

The Plaintiffs moved for class certification on January 16, 2023.[11] That motion has been fully briefed and is now ripe for disposition.[12]

## II. LAW

Plaintiffs seeking class certification must "satisfy the prerequisites of Rule 23(a)" and also "show that the action is maintainable under Rule 23(b)(1), (2), or (3)."[13] To succeed, they must "affirmatively demonstrat[e]" their compliance with the requirements of Rule 23 "by a preponderance of the evidence."[14]

When assessing whether certification is proper, courts must "refrain from conducting a preliminary inquiry into the merits."[15] That said, the United States Court of Appeals for the Third Circuit directs courts to "carefully examine the factual and legal allegations."[16]

---

[10] *See* Doc. 1 (Compl.) ¶¶ 82–93 (class action allegations), 94–102 (Count I: Breach of Fiduciary Duties of Loyalty and Prudence, against Hawbaker and the Plan Administrator), 103–09 (Count II: Failure to Adequately Monitor Other Fiduciaries, against Hawbaker and the Board).
[11] *See* Doc. 26 (Class Cert. Mot.).
[12] *See* Doc. 27 (Class Cert. Br.); Doc. 28 (Defs' Opp.); Doc. 29 (Plaintiffs' Reply).
[13] *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998) (internal quotation marks and citation omitted).
[14] *Russell v. Educational Commission for Foreign Medical Graduates*, 15 F.4th 259, 265 (3d Cir. 2021) (internal quotation marks and citation omitted).
[15] *Barnes*, 161 F.3d at 140.
[16] *Id*.

### III.   ANALYSIS

The Plaintiffs move under Rules 23(a) and 23(b)(1) to certify the following class:

> All current and former hourly wage employees who worked on prevailing wage contracts at [Hawbaker] within the Commonwealth of Pennsylvania during the period September 1, 2012, through December 31, 2018.[17]

For the reasons provided below, the Court finds that the Plaintiffs have satisfied all four prerequisites of Rule 23(a) as well as the requirements of both Rules 23(b)(1)(A) and 23(b)(1)(B). Class certification is therefore warranted.

### A.   Rule 23(a)

Under Rule 23(a), plaintiffs must satisfy four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[18] The Court addresses each in turn.

#### 1.   Numerosity

The first Rule 23(a) prerequisite asks whether "the putative class is 'so numerous that joinder of all members is impracticable.'"[19] Neither the rule nor courts interpreting it have imposed a "minimum number of plaintiffs . . . required to maintain a suit as a class action."[20] That said, the Third Circuit instructs that

---

[17] Doc. 27 (Class Cert. Br.) at 2.
[18] *See Barnes*, 161 F.3d at 140 (citing Fed. R. Civ. P. 23(a)).
[19] *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(1)).
[20] *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (internal quotation marks and citation omitted).

"generally[,] if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[21]

In their moving brief, the Plaintiffs claim there were "1,400 plus participants" in the Hawbaker Benefits Plan during the class period.[22] But as proof, the Plaintiffs cite only the "Annual Return/Report of Employee Benefit Plan on Form 5500 for 2018," for which they provide the URL; they offer no evidence received via discovery and make no mention of the criminal complaint against Hawbaker filed by the Pennsylvania Attorney General.[23]

In response, the Defendants bemoan the lack of evidentiary support, noting that the Plaintiffs have not "point[ed] to any record evidence regarding the number of eligible prevailing wage workers."[24] Indeed, although the proposed class includes only "hourly wage employees who worked on prevailing wage contracts," the Plaintiffs' moving brief did not "specify how many of these workers there actually were."[25]

But the Plaintiffs remedy this deficiency in their Reply brief. Specifically, the Plaintiffs note that their Complaint "tracks almost verbatim the irrefutable (and

---

[21] *Id*. at 249–50 (internal quotation marks and citation omitted).
[22] *See* Doc. 27 (Class Cert. Br.) at 18 (citing Annul Return/Report of Employee Benefit Plan on Form 5500 for 2018, at 3).
[23] *See id*.
[24] Doc. 28 (Defs' Opp.) at 10.
[25] *Id*. (emphasis omitted). All quotations from the Defendants' brief included in this Memorandum Opinion omit the bold oand/or italics that Defense counsel added for emphasis. *See Hyperphase Technologies, LLC v. Microsoft Corp.*, No. 02-C-647-C (W.D. Wis. July 1, 2003).

unrebutted) proof of [Hawbaker's] criminal conduct, which is set forth in the [Attorney General's] criminal complaint charging [Hawbaker] with four felonies of 'theft by failure to make required disposition of funds received.'"[26] They emphasize that Hawbaker "entered into a plea agreement, in which it pleaded no contest to the four felony charges and agreed to pay restitution to the 1,262 prevailing wage workers listed on Attachment A to the plea agreement."[27] The Plaintiffs identify those 1,262 prevailing wage workers as "the Class Members," arguing that "the restitution amounts for each" contained in the Attachment "prove conclusively that each Class Member suffered an ascertainable loss of retirement benefits during the Class Period."[28] To the extent there are class members not encompassed by Hawbaker's plea agreement, the Plaintiffs argue that their identities can be established through Hawbaker's business records (which Hawbaker purportedly has yet to produce in this case).[29]

As the Plaintiffs note, Federal Rule of Evidence 201 provides that courts may take "judicial notice" of facts "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy

---

[26] Doc. 29 (Plaintiffs' Reply) at 1 (citing Doc. 30-1 (Hawbaker Criminal Complaint & Affidavit of Probable Cause)).
[27] *Id*.
[28] *Id*. at 4.
[29] *Id*. at 5; *see also id.* at 2 ("While Defendants have produced some documents, they have failed to provide relevant electronic records (such as company payroll records and Prevailing Wage Project letters) that they produced to the [Office of the Attorney General].").

cannot reasonably be questioned."[30] Consistent with that Rule, the Court takes judicial notice of the Pennsylvania Attorney General's criminal complaint, Hawbaker's *nolo contendere* plea, and the employee information contained in the restitution table attached to the plea agreement.[31] The Court agrees with the Plaintiffs that by pleading no contest to the four offenses charged, Hawbaker has, indeed, rendered the existence of the plea agreement and the employment records attached thereto "irrefutable."[32] And those facts establish that the potential number of plaintiffs significantly exceeds the forty (40) sufficient to satisfy the numerosity requirement.

### 2. Commonality

For the second prerequisite of Rule 23(a), plaintiffs must demonstrate "that 'there are questions of law or fact common to the class.'"[33] The Third Circuit explains that commonality "does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[34]

---

[30] Fed. R. Evid. 201(b)(2).
[31] *See* Doc. 30-1 (Hawbaker Criminal Complaint & Affidavit of Probable Cause); Doc. 30-2 (Hawbaker Plea Agreement); Doc. 32 (Hawbaker Restitution Table – SEALED).
[32] Doc. 29 (Plaintiffs' Reply) at 3.
[33] *Johnston*, 265 F.3d at 184 (citing Fed. R. Civ. P. 23(a)(2)).
[34] *Id.* (brackets, citation, and internal quotation marks omitted).

Here, the Plaintiffs identify several "overarching questions of law or fact" that are "applicable to all Plan participants," including "whether [the] Defendants breached fiduciary duties owed to the Plan and its participants by failing to pay properly and timely the correct amount of wages and benefits."[35] The Defendants again respond by citing the Plaintiffs' purported failure to provide "evidence regarding when or how often either the named class representatives or the putative class members worked on prevailing wage projects."[36] According to the Defendants, the absence of evidence is particularly important for this Rule 23(a) prerequisite because "it is entirely possible that certain putative class members are owed no money at all and that certain putative class members have actually been overpaid under Hawbaker's policy."[37]

But as the Plaintiffs argue, this concern is obviated by the restitution schedule attached to Hawbaker's plea agreement: because the restitution schedule itemizes Hawbaker's payment obligations by plan participant, and the listed participants comprise the bulk of the putative class, the Plaintiffs can show both

---

[35] Doc. 27 (Class Cert. Br.) at 19.
[36] Doc. 28 (Defs' Opp.) at 12–13.
[37] *Id*. at 13 (explaining that "the 'prevailing wage money' was allegedly distributed into each employee's individual retirement account, regardless of whether that individual ever worked on a prevailing wage project (or, regardless of how many prevailing wage projects each individual actually worked on)").

9

that the class members are entitled to damages and precisely how much each member is owed.[38]

The Court therefore concurs with the Plaintiffs that there are questions of both law and fact common to the proposed class, and finds the Defendants' objections unpersuasive. The Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

The third Rule 23(a) prerequisite asks whether "the claims of the class representatives [are] typical of the class as a whole."[39] For this, "the district court must determine whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."[40] Accordingly, the typicality showing is relatively modest: "so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."[41]

Here, the alleged injuries to all proposed class members stem from the same conduct. According to the Plaintiffs, the Defendants breached their fiduciary duties by not paying the Hawbaker Benefits Plan participants "the correct amount of

---

[38] *See* Doc. 29 (Plaintiffs' Reply) at 7; *see also* Doc. 32 (Hawbaker Restitution Table – SEALED).
[39] *Johnston*, 265 F.3d at 184.
[40] *Id.* (brackets, ellipsis, and internal quotation marks omitted).
[41] *Id.* (internal quotation marks omitted).

wages and benefits."[42] The Defendants' response is again premised solely on the purported absence of evidentiary support for the Plaintiffs' claims.[43] But, as discussed, this objection is without merit: the allegations in the Pennsylvania Attorney General's criminal complaint and the supporting documentation attached thereto provide the factual basis for both this case and the Plaintiffs' motion for class certification.[44] Moreover, each of the named Plaintiffs submitted declarations affirming they were participants in the Hawbaker Benefits Plan and that they worked on Hawbaker's prevailing wage projects in Pennsylvania during the Class Period.[45] And the Complaint contains specific allegations about their dates of employment, job titles, and the amount of time spent of prevailing wage projects.[46]

Taken together, this information establishes that the claims the Plaintiffs advance on their behalf and on behalf of all other putative class members involve

---

[42] Doc. 27 (Class Cert. Br.) at 21; *see also* Doc. 29 (Plaintiffs' Reply) at 9–10 ("The breach of fiduciary claims of [the] Plaintiffs and all other Class Members seek to redress [the] Defendants' uniform failure to comply with the terms of the Plan and [U.S. Department of Labor] regulations by failing to make required contributions to the 401(k) accounts of [the] Plaintiffs and the Class within the strict time limitations for making such contributions and making contributions that were less than the required amounts throughout the Class Period. [The] Defendants' fiduciary breaches caused the Plan to sustain millions of dollars of losses, and every worker (Class Member) listed on Attachment A to the [Hawbaker] plea agreement—like [the] Plaintiffs—would have had more money available to them for retirement due to [the] Defendants' wrongful acts.") (internal citations omitted).

[43] *See* Doc. 28 (Defs' Opp.) at 14 ("Plaintiffs cannot satisfy the typicality requirement, as they fail to provide any evidence about themselves, or about the members of the putative class they seek to represent, other than the fact that they were Hawbaker employees who allegedly worked on prevailing wage projects at some point during the defined class period.").

[44] *See* Doc. 30-1 (Hawbaker Criminal Complaint & Affidavit of Probable Cause).

[45] *See* Doc. 27-2, Ex. A (Jan. 10, 2023, L. Packer, Sr. Decl.); Doc. 27-3, Ex. B (Jan. 10, 2023, L. Packer II Decl.); Doc. 27-4, Ex. C (Jan. 10, 2023, S. Dyroff Decl.).

[46] Doc. 1 (Compl.) ¶¶ 8–10.

the same conduct by the Defendants. The typicality requirement is therefore satisfied.

### 4. Adequacy of Representation

The final Rule 23(a) prerequisite provides that "class representatives must 'fairly and adequately protect the interests of the class.'"[47] And for that, the required showing is twofold: the named plaintiffs must demonstrate that their interests do not "conflict with those of the class," and that "the class attorney is capable of representing the class."[48]

Here, the Plaintiffs have established both prongs of the adequacy inquiry. As the Supreme Court of the United States has explained, the first prong of the adequacy inquiry "tends to merge with the commonality and typicality criteria of Rule 23(a)," as all "serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[49] Accordingly, this Court's findings concerning commonality and typicality apply with equal force to this Rule 23(a) prerequisite. The Court agrees with the Plaintiffs that they "have the same

---

[47] *Johnston*, 265 F.3d at 185 (quoting Fed. R. Civ. P. 23(a)(4)).
[48] *Id*.
[49] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal quotation marks, brackets, and ellipses omitted); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) ("There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and [this] part of the adequacy inquiry that focuses on possible conflicts of interest.").

incentives and motivations to obtain full relief from [the] Defendants as all other Class Members."[50]

For the second prong, the Court likewise concurs with the Plaintiffs: they have, indeed, "retained experienced class action attorneys who are well qualified to pursue the Class's claims."[51] The Defendants have not raised any issues regarding the adequacy of the Plaintiffs' counsel for purposes of representing the Class.[52]

### B.  Rule 23(b)

Because the Plaintiffs have satisfied the Rule 23(a) requirements, the Court now turns to Rule 23(b), which outlines in subsections (1) to (3) the three "types" of classes that "may be certified."[53] Here, the Plaintiffs seek certification under Rule 23(b)(1). That rule authorizes classes in two circumstances: if prosecuting separate actions by or against individual class members would create either "(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class"; or "(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their

---

[50] Doc. 29 (Plaintiffs' Reply) at 12.
[51] *Id*.
[52] *See* Doc. 28 (Defs' Opp.) at 17 n.4 ("Hawbaker does not dispute the alleged qualifications of Plaintiffs' counsel under Rule 23(a)(4)'s adequacy prong.") (cleaned up).
[53] *Schering Plough*, 589 F.3d at 596.

ability to protect their interests."[54] The proposed class satisfies the requirements of both Rule 23(b)(1)(A) and Rule 23(b)(1)(B).

The Third Circuit has consistently "held that ERISA 'breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'"[55] For Rule 23(b)(1)(A), this Court finds particularly instructive the rulings in *Boley v. Universal Health Services, Inc.* At the district court level, my colleague from the Eastern District of Pennsylvania, the Honorable Mark A. Kearney, found certification appropriate under Rule 23(b)(1)(A) for the ERISA breach of fiduciary duty action.[56] Judge Kearney explained that because "[t]he [p]articipants—on behalf of the [p]lan—generally allege[d] the [f]iduciaries mismanaged the [p]lan's investments, failed to monitor the decision-making process regarding investments, and allowed participants to be charged excessive fees," if he "allowed separate actions to proceed, the [f]iduciaries could be subject to varying and incompatible standards of conduct and liability."[57] This ruling was not disturbed on appeal.[58]

As in *Boley*, this case centers on allegations that fiduciaries mismanaged the funds in an employee benefit plan, with companion allegations that the company

---

[54] Fed. R. Civ. P. 23(b)(1)(A), (B).
[55] *Boley v. Universal Health Services, Inc.*, 36 F.4th 124, 136 (3d Cir. 2022) (quoting *Schering Plough*, 589 F.3d at 604)).
[56] *Boley v. Universal Health Services, Inc.*, 337 F.R.D. 626, 638–39 (E.D. Pa. 2021), *aff'd* 36 F.4th 124 (3d Cir. 2022).
[57] *Id.* at 639.
[58] *See Boley*, 36 F.4th at 130 n.6.

and its board of directors failed to monitor the fiduciaries' activities.[59] Accordingly, the analysis in *Boley* applies with equal force here: allowing separate actions to proceed could result in contrary rulings concerning the scope of the Defendants' respective duties and whether their conduct violated those duties. The Court therefore agrees with the Plaintiffs that "one district court should determine whether [the] Defendants' uniform conduct with respect to the [Hawbaker Benefits Plan] constitutes a breach of fiduciary duties."[60]

Separately, the Defendants argue that certification under Rule 23(b)(1)(A) would be improper in this case because the predominant relief sought is monetary damages, citing a 1997 district court ruling from the Eastern District of Pennsylvania in *Wilensky v. Olympic Airways, S.A.* for the proposition that Rule 23(b)(1) "was not intended to authorize certification where a primary objective of the class action is monetary damages."[61] But that case was a putative class action concerning alleged violations of the Federal Aviation Act.[62] The

---

[59] *See* Doc. 1 (Compl.) ¶¶ 99 (alleging that Hawbaker and the Plan Administrator breached their fiduciary duties by "failing to make required contributions to [the] Plaintiffs' and the [Class's] individual 401(k) accounts within the strict time limitations for making such contributions and in [the] required . . . amounts"), 107 (alleging that Hawbaker and its Board of Directors "[f]ail[ed] to monitor and evaluate the performance of the Plan Administrator" and "the process by which Plan contributions were made to participant amounts").

[60] Doc. 29 (Packer Reply) at 14.

[61] *See* Doc. 28 (Defs' Opp.) at 19 (quoting *Wilensky v. Olympic Airways, S.A.*, 73 F.R.D. 473, 477 (E.D. Pa. 1997)).

[62] *See Wilensky*, 73 F.R.D. at 474.

Defendants provide no analysis for how that case—or the principal holding for which its cited—applies to ERISA breach of fiduciary duty class actions.[63]

That's for good reason. In *Boley*, Judge Kearney confronted the same argument the Defendants' present here and described it as "a misapprehension of the nature of an ERISA class action case," in which any damages awarded "would belong to the [benefits plan] in the first instance rather than to the [p]lan participants."[64] Judge Kearney held that "[t]he fact the [p]lan would subsequently distribute damages to [p]lan participants does not convert the lawsuit into one where putative [c]lass members are directly seeking individualized monetary damages."[65] This Court again concurs with Judge Kearney; the Plaintiffs are not barred from certifying their putative class under Rule 23(b)(1) due to the nature of the damages at issue.

For Rule 23(b)(1)(B), the Court looks to the Third Circuit's ruling in *In re Schering Plough Corp. ERISA Litigation*. In that case, the Third Circuit affirmed the district court's decision granting certification under Rule 23(b)(1)(B) in an ERISA breach of fiduciary duty action.[66] The Third Circuit explained that unlike class certification under Rule 23(b)(3), for "Rule 23(b)(1)(B) class certification . . . there is no predominance or superiority requirement"; the question

---

[63] *See* Doc. 28 (Defs' Opp.) at 19.
[64] 337 F.R.D. at 638 (quoting *Jacobs v. Verizon Communications*, 2020 WL 4601243, at *14 (S.D.N.Y. June 1, 2020)).
[65] *Id*.
[66] 589 F.3d at 604–05.

is only whether prosecuting separate actions would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."[67] To that end, the Third Circuit explained that ERISA breach of fiduciary duty claims "are based on [a] defendants' conduct, not . . . on unique facts and individual relationships," and, as such, an individual plaintiff's "proofs regarding [the] defendants' conduct will, as a practical matter, significantly impact the claim of other [participants in the benefits plan at issue]."[68]

That ruling controls the Court's analysis here. Because the Plaintiffs' claims are based on the Defendants' administration or oversight of the Hawbaker Benefits Plan, the class members, were they forced to litigate their claims individually, would have to make identical showings—presumably relying on the same evidence. Accordingly, as in *Schering Plough*, a ruling as to one class member would "significantly impact the claim[s] of other [participants in the Hawbaker Benefits Plan]."[69] Class certification is therefore appropriate under Rule 23(b)(1)(B) as well.

---

[67] *Id*. at 604 (citing Fed. R. Civ. P. 23(b)(1)(B)).
[68] *Id*.
[69] *Id*.

## IV. CONCLUSION

Given the clear direction provided by the Third Circuit, this Court is favorably disposed to requests for class certification on ERISA breach of fiduciary duty claims such as those presented here. And by tethering their claims to the criminal complaint the Pennsylvania Attorney General brought against Hawbaker—to which Hawbaker pleaded no contest—the Plaintiffs have presented the evidence necessary to meet their obligations under Rule 23. The motion for class certification is therefore granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge